ANDBRSON, J.
delivered the opinion of the court.
TRe court is of opinion, upon the authority of Knight & wife v. Oliver, 12 Gratt. 33, that an heir-at-law, who has been advanced in the lifetime of his ancestor, is entitled to participate in the division after the death of the widow in the real estate which had been assigned to her in dower, although he had refused to bring his advancements into hotchpot, in order to participate in the previous division of the estate, which was not embraced in the assignment to the widow. It is true, that the question decided in that case was as to the right of the advanced ‘child to participate in the *distribution of slaves which had been allotted to the widow *370 for her life. The court is of opinion that the principle is the same when applied to real estate.
In this case there were twelve children. And by the decree of the court in Ch. S. Kirkwood & als. v. Lewis Harvey’s heirs & als., one-third of the slaves and one-third of the real estate were allotted to the widow for life, and the other two-thirds were divided between ten of the children; the remaining' two being unwilling to bring in their advancements, did not participate in that division. And the court can perceive no reason if, after the death of the widow, they would be permitted to participate in the distribution of the dower slaves, why they should not be allowed to participate also in the division of the dower lands.
But it is contended for the appellees, that the first division was made by a decree of a court of competent jurisdiction, inter par-tes, the appellants being parties, who having refused to bring their advancements into hotchpot, and come into the division and distribution of the property then divided and distributed, with the other heirs, it was adjudged, ordered and decreed, that they should be debarred and precluded from participation in the future division and distribution of the slaves and real estate which had been assigned to the widow for life. Is this a proper interpretation of the decree in that case? Did the court mean to exclude the appellants from all participation in the division of the estate, slaves and land, which had been assigned to the widow for life, and which was not intended to be divided until after her death, if they failed or refused to bring their advancements into the first distribution and division, or only from a participation in any part of the estate then divided? As was said in Oliver & Knight, supra, in relation to the allegations of *the bill and the admissions of the answer in that case, so it may be said in this case, that the terms of the decree are sufficiently broad to embrace the property reserved for future division and distribution, as well as that which was then divided and distributed. The language of the decree in this case is not broader than that employed in the bill and answer in that case; yet the court held in that case, that looking to the rights of the several parties and to the objects most probably contemplated by them, the allegations and admissions in respect to Knight’s advancements, and his choosing not to bring the same into distribution, ought to be construed as referring to the two-thirds of the surplus then to be distributed, and not as extending also to the slaves in the widow’s share. And upon the same principles of construction ought not the terms of. the decree to be so construed in this case? The rights of the several parties were the same as in that case; and it might be inferred from so much of the record as is before us, that the objects contemplated by them were the same. The decree in this case settles and adjusts the rights of the parties severally in the two-thirds of the estate then divided, and in that only. It first ascertains and decrees against each one of ten of the heirs and distributees, the amount he shall pay for owelty of partition of two-thirds of the estate, and to whom it shall be paid, and directs mutual conveyances to be made from one to another of the ten heirs, in accordance with their several rights, as ascertained by the decree. And as to the remaining two heirs, who refused to bring their advancements into the distribution and division, it next decides upon their rights, and declares that they shall have no part in the estate thus divided: the language is broader, “that they be barred and precluded from participating in the division *and distribution of any part of the estate (it may be construed of that estate) of said intestate.” Ought not this language, as was done in the case above cited, be construed as limited to the subject of the suit, as adjudicating and determining the rights of all the heirs, as to the estate then divided?
Such, we think, is the proper construction of the decree, unless the record shows it was not only the object of the suit to divide two-thirds of the estate, but also to ascertain and determine what were the several rights of the parties in the reversion. There might be a case where the wants and interests of the unadvanced children might require, that they should make sale of their interests in the reversion, and which might be done without prejudice to the rights and interests of the advanced children, but which could not be well done until the number of shares into which the reversion was to be-divided was ascertained and determined. And in Knight & wife v. Oliver, Judge Daniel intimates an opinion, that in such a state of things,, “upon a bill filed containing the proper allegations, and setting forth distinctly the objects of the suit,” a court of equity might compel “an advanced child, to elect whether he would hold on to his advancements, or bring them in and claim his interest in the reversion.” Such may have been the case in Kirkwood & als. v. Lewis Harvey’s heirs; and if it was, we could hardly give the foregoing construction to the decree. In such a case, it would seem to have been the purpose of the decree to ascertain and determine that two of the heirs named in the decree were not entitled to participate in the distribution and division of the reversion; and so to determine the number of shares into which it was to be divided. And the decree, whether right or wrong, would be binding on the *heirs until reversed; and could not be avoided in a collateral way.
But only a small part of the record of' that suit is before us. The whole record ought to have been made a part of this. And, in the absence of the bill and answer especially, we could not say what was the object of the suit, if any, other than the division of that part of the estate which was ready for division. We cannot say that the case presented by the bill was such as to require a decree to settle and adjust the rights of *371 the several parties in the reversion, and that such object was distinctly set forth.
The question, whether the appellant, David Persinger, has a right to join in this suit, depend upon the decision of the cause upon the merits. His wife, having survived her mother, the doweress, if she was entitled to a share of the reversion, which she would be, unless her right was divested by the decree aforesaid, would be immediately invested with the right of possession; and the possession of any one of the co-parceners was her possession, and her husband was immediately invested with a life estate by the curtesy. Poindexter & wife v. Jeffries, 15 Gratt. 363.
The court is also of opinion that the right of the plaintiffs to sue is not barred by the statute of limitations.
Por the foregoing reasons, the court is of opinion to reverse the decree of the Circuit court, with costs, and to remand the cause for further proceedings to be had therein in conformity with this opinion; and that either party be allowed to offer in evidence the full record in the case of Charles S. Kirkwood & als. v. Rewis Harvey’s heirs & als.
Decree reversed.